UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEVEN BUTLER,<br>Plaintiff,<br>v.<br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br>Defendants. | Case No. 17-cv-02399-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 22 |

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at Correctional Training Facility ("CTF"). Plaintiff, an adherent to the Nation of Islam ("NOI"), alleges that defendants interfered with his ability to practice his religion in violation of the free exercise clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the equal protection clause of the Fourteenth Amendment and related state laws. Specifically, he argues that defendants failed to show NOI videos on a prison television channel and failed to provide a NOI chaplain. He seeks money damages and injunctive relief. This case was related to *Wade v. CDCR*, No. 17-0042 PJH, which was closed earlier this year when defendants' motion for summary judgment was granted. Both cases contain the same claims and allegations.

Defendants filed a motion for summary judgment in this case on April 23, 2018. Plaintiff was provided multiple extensions of time to file an opposition, which was due by August 8, 2018. Plaintiff filed an opposition on August 29, 2018. However, a review of the opposition indicates that it is substantially similar to the opposition filed in *Wade v. CDCR*, No. 17-0042 PJH, and as such fails to address several issues in the instant

motion for summary judgment. Regardless, the court has still reviewed the opposition and, for the reasons set forth below, the motion for summary judgment is granted.

## MOTION FOR SUMMARY JUDGMENT

**Legal Standards**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

In order to establish a free-exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85. Rather, the test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines the Free Exercise Clause inquiry. *Id.* (finding district court impermissibly focused on whether consuming halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious

practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see, e.g., Walker v. Beard*, 789 F.3d 1125, 1135-37 (9th Cir. 2015) (prison's classification of a white racist inmate as eligible to be housed with a person of a different race and its refusal to grant him an exemption did not violate Aryan Christian Odinist inmate's religious rights under the Free Exercise Clause because prison's policy was reasonably related to the penological interest in avoiding the legal liability of equal protection suits brought by other inmates). Security interests may require prisons to restrict attendance at religious services, but the inmates must be provided with an alternative means of meeting the need for those services. *See McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987) (protective custody inmate can be denied permission to attend service of a particular denomination if he is permitted to attend interdenominational service).

Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The statute applies "in any case" in which "the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1). RLUIPA also includes an express private cause of action that is taken from RFRA: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief

3

against a government." 42 U.S.C. § 2000cc-2(a); cf. § 2000bb-1(c). For purposes of this provision, "government" includes, inter alia, states, counties, municipalities, their instrumentalities and officers, and "any other person acting under color of state law." 42 U.S.C. § 2000cc-5(4)(A).

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987). The court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted) (finding district court erroneously applied rational basis review to plaintiff's claim that defendants violated equal protection clause by providing only Jewish inmates with kosher meat diet and remanding claim so record could be more fully developed regarding defendants' asserted penological interests).

An inmate "'must set forth specific facts showing a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85. *See, e.g., Hartman v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (affirming dismissal of equal protection claim based on denial of request for a paid Wiccan chaplain where pleadings suggested a reasoned and vetted denial – paid Wiccan chaplain not necessary because a volunteer Wiccan chaplain provides services at prison and staff chaplains are available to provide inmates with religious assistance – rather than discriminatory intent).

4

Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every religious benefit it provides so that all religions are treated exactly the same. As the Supreme Court explained in *Cruz*:

> We do not suggest . . . that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

405 U.S. at 322 n.2.

**Facts**

A review of the records indicates that the following facts are undisputed unless otherwise noted:

During the relevant time, plaintiff was incarcerated at CTF. Complaint ("Compl.") at 4. Plaintiff is an adherent of the NOI and occasionally attended Islamic services at CTF. Compl. at 5; Motion for Summary Judgment ("MSJ") Aquil Decl. ¶ 12. Plaintiff requested that videos from the NOI be broadcast on the CTF system-wide television channel and that a NOI chaplain be provided. Compl. at 6-11. These requests were denied because defendants felt that the NOI had been found to promote racist and anti-Semitic views that violate prison nondiscriminatory policy and cannot be publicly endorsed by CTF. Aquil Decl. ¶¶ 4, 9-11, 15, 20. Plaintiff denies that the NOI has racist and anti-Semitic beliefs, calling such a viewpoint a "matter of perception". Opposition at 3. Plaintiff states, "[t]he proponents of this perception primarily come from those whom injustices, immoral behavior, and atrocities are exposed by the truths that come from [the NOI]. . . ." *Id.* However, plaintiff concedes that some NOI teachings could be problematic, stating, "I understand that there can be a shock factor to most white people, you know. And that can be something that can actually be a turnoff and upset people." MSJ, Ross Decl., Ex. C, Butler Depo. at 32. Plaintiff also concedes that if taught improperly by the wrong individual, NOI teachings would be threatening to white inmates

5

and white correctional staff. *Id.*

Defendants determined that plaintiff's requests would be for institutional educational equipment to be used for religious purposes. Aquil Decl. at ¶ 18; Urquidez Decl. ¶ 7. Plaintiff was informed that the prison received federal funding to purchase educational equipment and, pursuant to the Federal Education Act, the equipment cannot be used for religious purposes such as broadcasting religious television programs within the prison. Urquidez Decl., Ex. A. The reason that other religious groups could broadcast on prison television channels was because outside organizations, not the prison, covered the costs for the programming, equipment and installation. Ross Decl., Ex. A. Several Christian organizations had provided funding for these endeavors, and the Muslim chaplain, defendant Chaplain Aquil, was able to broadcast programming because he had acquired funding. *Id.* Plaintiff was informed that if he was aware of an organization that could provide funding for the programming and equipment, the organization should contact the prison. *Id.* Plaintiff argues that there are video channels for noneducational purposes that can show religious videos. Opposition at 11.

Chaplain Aquil converted to Islam in 1962. Aquil Decl. at ¶ 3. He began studying the NOI in 1974 and served as a NOI acting minister for Temple 27-C in Watts, California. *Id.* In 1974 and 1975 he was assigned as a minister for the NOI in Seattle, Albuquerque and Shreveport. *Id.*

Chaplain Aquil encouraged plaintiff and other NOI members to join the common Muslim services that were already in place at CTF. Aquil Decl. ¶¶ 12, 15. The Islamic Program at CTF was tailored to be inclusive for all Islamic sects by emphasizing values that all Muslims share. *Id.* at ¶¶ 12, 24-25. Plaintiff occasionally attended Jumu'ah services provided by Chaplain Aquil. *Id.* at ¶ 12. Chaplain Aquil also sought out appropriate NOI written materials for plaintif; helped plaintiff formally request a television channel; and inquired about whether an inmate could serve as a NOI chaplain. *Id.* at ¶¶ 13, 19, 21, 22.

The chaplain's office at CTF had several NOI VHS videotapes, and there was a

6

1 video player in the chapel. *Id.* at ¶ 14. Chaplain Aquil reviewed the videos and removed

2 those videos that contained inappropriate racist, anti-Semitic or homophobic content. *Id.*

3 Once a month and then twice a month, Chaplain Aquil invited NOI inmates to the chapel

4 to view the videos, and plaintiff occasionally watched the videos. *Id.*

Plaintiff was also allowed to privately congregate for NOI services on the prison yard or in a housing unit; engage in written correspondence with a NOI chaplain and purchase authorized religious items. *Id.* at ¶ 21. Chaplain Aquil also contacted a NOI minister for suggestions. *Id.* NOI inmates and Chaplain Aquil were unable to come to an agreement for NOI inmates to use the chapel without supervision. *Id.* at ¶ 20; Opposition at 12-13.

The NOI members were not the only religious group that did not have access to their own chaplain or broadcast video presentations. Urquidez Decl. ¶ 11. Wiccans relied on the Native American chaplain, and Jehovah's Witnesses relied on the Protestant chaplain. *Id.* Chaplain Aquil did not make hiring decisions regarding chaplains. Aquil Decl. ¶¶ 22-23.

Plaintiff and Chaplain Aquil have differing views on various aspects of the NOI and its teachings. Opposition at 7-8.

## ANALYSIS

### Free Exercise

For purposes of this motion, the court finds that plaintiff's beliefs are sincerely held and rooted in religious conviction. Defendants first argue that they did not burden the practice of plaintiff's religion. With respect to the desired video presentations, it is undisputed that plaintiff and other NOI inmates were able to watch NOI videos in the chapel. Plaintiff has not presented any arguments that viewing the videos in the chapel burdened the practice of his religion as opposed to viewing the videos on a prison television channel. Plaintiff fails to articulate why other prisoners who are not part of his faith must be allowed to watch the videos on a prison television channel. Defendants did not burden the practice of plaintiff's religion with respect to the videos and are entitled to

7

summary judgment on this claim.

Defendants are also entitled to summary judgment on the claim that they failed to provide a NOI chaplain. The First Amendment does not require prisons to provide inmates with the chaplain of their choice. *Hartman v. Cal. Dep't. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (*citing Cruz*, 405 U.S. at 322, n.2); *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) (failure to provide Unitarian Universalist chaplain did not violate free-exercise clause where inmate had "reasonable opportunity" to exercise his faith). Plaintiff has not shown that he was prohibited from exercising his faith, and the Muslim chaplain provided many opportunities for plaintiff and other NOI inmates to pursue their religious beliefs.

Even assuming that defendants impinged on plaintiff's First Amendment rights, they argue that the denial of plaintiff's requests was reasonably related to legitimate penological interests. Defendants presented arguments and evidence with respect to the factors set forth in *Turner*. Plaintiff cited several cases but failed to address the *Turner* factors.

Allegations of a denial of an opportunity to practice religion "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) (*citing Turner*, 482 U.S. at 89-90); *see Beard v. Banks*, 548 U.S. 521, 532-33 (2006) (noting that application of the *Turner* factors does not turn on balancing the factors but on determining whether the defendants show a reasonable relation, as opposed to merely a logical relation).

Defendants argue that there was a valid, rational connection between the denials

of plaintiff's requests and the legitimate government interest to justify the denials. Defendants contend that the NOI presents racist, homophobic and anti-Semitic beliefs, and defendants have a legitimate interest in following policies of inclusion and anti-discrimination. While the parties dispute whether the NOI presents racist, homophobic and anti-Semitic beliefs, defendants have a legitimate interest in following policies of inclusion and anti-discrimination. Plaintiff concedes that some NOI teachings could be threatening to white individuals. In *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.11 (2005), the Supreme Court stated "Courts, however may be expected to recognize the government's countervailing compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order."

Even if it were found that the NOI did not present discriminatory beliefs, defendants had a legitimate government interest in denying plaintiff's use of a prison television channel and educational department equipment for religious purposes. It is undisputed that the Federal Education Act prevents use of federal education funds for religious worship or instruction. It was reasonable for defendants to deny the requests so as to not violate federal law. *See, e.g., Walker,* 789 F.3d at 1135-37.

With respect to the second factor, plaintiff had an alternative means to exercise his right. Plaintiff and other NOI inmates were able to watch videos in the chapel and the Muslim chaplain actively sought out ways to include the NOI inmates in the Islamic program and incorporate their beliefs. It is undisputed that plaintiff occasionally attended services. Defendants have also met their burden with respect to the third factor. If plaintiff's requests were accommodated, there would be a significant impact on guards and inmates. The safety of guards and other inmates would be at issue if the prison authorized and provided funds for a religion and teachings that many consider being prejudiced against others. If the prison paid for a chaplain for the NOI, then the prison would need to pay for chaplains for other religions. Finally, the prison cannot use educational equipment funds for religious purposes or they would be in violation of federal law.

9

1   Defendants have also shown they are entitled to summary judgment with respect to the fourth factor. There are ready alternatives already in place, as discussed above. Plaintiff was able to view the videos, and there were many ways for him to practice his religion. For all these reasons, summary judgment is granted on this claim.

**RLUIPA**

Plaintiff cannot obtain money damages pursuant to RLUIPA. RLUIPA does not authorize suits against state actors (including prison officials) acting in their individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). Claims may only be brought against such defendants in their official or governmental capacity. *Id.* at 904.

Yet, the availability of money damages from state officials sued in their official capacity turns on whether the State has waived its Eleventh Amendment immunity from such suits or Congress has abrogated that immunity under its power to enforce the Fourteenth Amendment. *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1112 (9th Cir. 2010). Although a state may choose to waive its Eleventh Amendment sovereign immunity, its consent to suit "must be 'unequivocally expressed' in the text of the relevant statute" and may not be implied. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (*quoting Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). RLUIPA's provision that a person asserting a violation may obtain "appropriate relief," 42 U.S.C. § 2000cc-2a, does not unambiguously impose a waiver of sovereign immunity from claims for damages as a condition of receipt of federal funds, so a state's receipt of such funds is not a waiver. *Sossamon*, 563 U.S. 277 at 293 (holding that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver"). And the provision of the Rehabilitation Act saying that states are not immune under the Eleventh Amendment from suits asserting violations of enumerated antidiscrimination statutes or "any other Federal statute prohibiting discrimination . . . ." 42 U.S.C. § 2000d-7, does not make a state's acceptance of federal funds a waiver of

immunity for RLUIPA claims because RLUIPA is not a "statute prohibiting discrimination." *Holley*, 599 F.3d at 1113-14. Consequently, RLUIPA does not authorize money damages against state officials, whether sued in their official or individual capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

Nor is plaintiff entitled to injunctive relief under RLUIPA. Defendants have met their burden in demonstrating the absence of a genuine issue of material fact, and plaintiff has failed to meet his burden in showing a genuine issue for trial. Plaintiff has not shown a substantial burden on his ability to practice his religion. He can view the NOI videos; he can meet with other NOI members for religious reasons, including worship; the Muslim chaplain has actively sought out ways to include plaintiff and other NOI inmates; and plaintiff has attended Muslim services. Defendants have used the least restrictive means to achieve a compelling government interest in avoiding inflammatory, racist, homophobic and anti-Semitic activity and in avoiding the improper spending of education funds on religious programming. This claim is denied.

**Equal Protection**

For the same reasons set forth above, summary judgment is granted to defendants on the equal protection claim. Plaintiff has not set forth specific facts showing a genuine issue as to whether he was denied a reasonable opportunity to pursue his faith compared to other prisoners. Nor has he shown that defendants intentionally acted in a discriminatory manner. In fact, defendants provided many ways for plaintiff to pursue his faith through the various services and options they provided. Defendants are not liable because other religious faiths acquired outside funding to provide other services. The prison need not duplicate every religious benefit that other religions are provided. *See Cruz* at 322 n.2. Moreover, there were various other groups that did not have their own prison television channel or their own chaplain. For example, Wiccans relied on the Native American chaplain, and Jehovah's Witnesses relied on the Protestant chaplain. Summary judgment is granted for this claim.

**Qualified Immunity**

11

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

The court has not found a constitutional violation, and, even if there was a violation, defendants would be entitled to qualified immunity. It would not be clear to reasonable officials in these positions that denying plaintiff the ability to broadcast NOI videos to the entire prison, while plaintiff and other inmates had the ability to watch them in the chapel would violate the law. Nor would it be clear that denying a NOI chaplain would violate the law when a Muslim chaplain was available, providing services and opportunities for NOI inmates, and when not every religious faith is entitled to the chaplain of their choice. Defendants are entitled to qualified immunity.[1]

---

[1] To the extent there was a cognizable claim in the complaint regarding denial of use of the chapel, the claim is denied. Plaintiff could privately congregate for NOI services on the prison yard or in a housing unit; engage in written correspondence with a NOI chaplain; and purchase authorized religious items. He has not shown that being denied the use of the chapel burdened the practice of his religion under any of the causes of action, and defendants would be entitled to qualified immunity.

12

**State Law Claims**

Under the California Tort Claims Act ("CTCA"), set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal. App. 4th 1767, 1776 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1244 (2004). Under California Government Code section 910, plaintiff is required to show, inter alia, the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim; a general description of the injury, damage or loss; and the names of the public employees causing the injury. *Id.*

Federal courts require compliance with the CTCA for pendant state law claims that seek damages against state public employees or entities. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.1995). State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *Karim–Panahi v. LAPD*, 839 F.2d 621, 627 (9th Cir.1988).

Defendants argue that plaintiff failed to file a government claim related to this case. Ross Decl., Ex. I. Plaintiff's only government claim submission was for a different case. *Id.* Plaintiff does not address the state law claims in his opposition. Therefore,

United States District Court
Northern District of California

1 plaintiff has failed to comply with the CTCA, and the state law claims must be dismissed.

2 Assuming plaintiff had argued that the government claim submitted by plaintiff Wade in the related case also applies to him, such an argument would fail because Wade's government claim was found to have been insufficient. In *Wade v. CDCR*, No. 17-0042 PJH, the court found that Wade had failed to comply with the claim presentation requirement of the CTCA. No. 17-0042 PJH, Docket No. 53 at 12-15. Any argument that plaintiff complied with the claim presentation requirement based on Wade's filing would be denied for the same reasons set forth in *Wade*. *Id*. For all these reasons, the state law claims are dismissed.[2]

## CONCLUSION

1. For the reasons set forth above, the motion for summary judgment (Docket No. 22) is **GRANTED**.[3]

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 26, 2018

PHYLLIS J. HAMILTON
United States District Judge

---

[2] The court takes judicial notice of the public records from the related case. Docket No. 23. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).
[3] Because the court has granted summary judgment on the merits, the exhaustion argument will not be addressed. Nor will the court address that certain defendants did not personally participate in the alleged violations or the availability of punitive damages. Plaintiff did not set forth an Establishment Clause claim in this case so the issue will not be addressed.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEVEN BUTLER,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Case No. 17-cv-02399-PJH<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 26, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Christopher Steven Butler
T83516
Correctional Training Facility
P.O. Box 682
Soledad, CA 93960

Dated: October 26, 2018

Susan Y. Soong
Clerk, United States District Court

*Kelly Collins*
_____
Kelly Collins, Deputy Clerk to the
Honorable PHYLLIS J. HAMILTON